**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MARY A. SCHEITLIN, | ) | NO. CV 12-1799-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on October 17, 2012, seeking review of the Commissioner's denial of social security benefits. The parties filed a consent to proceed before a United States Magistrate Judge on

November 8, 2012.  Plaintiff filed a motion for summary judgment on March 21, 2013.  Defendant filed a motion for summary judgment on June 22, 2013.  The Court has taken both motions under submission without oral argument.  See L.R. 7-15; "Order," filed October 19, 2012.

**BACKGROUND**

Plaintiff filed applications for Title II and Title XVI benefits on April 24, 2007, asserting disability since May 26, 2006 (Administrative Record ("A.R.") 196-202).[1]  Plaintiff alleged she suffers from fibromyalgia, heart problems, diabetes, personality disorders, neuropathy, Barrett's esophagus, depression, restless leg syndrome, and angina (A.R. 211).  Plaintiff's last insured date was December 31, 2006 (A.R. 13, 203).

An Administrative Law Judge ("ALJ") found that Plaintiff has severe morbid obesity, heart disease, diabetes mellitus II, degenerative joint disease of the left knee, osteoarthritis of both knees, degenerative disc disease of the lumbar and sacral spine, and fibromyalgia syndrome (A.R. 13 (appearing to adopt conditions identified by the medical expert at A.R. 32-33)).  The ALJ also determined, however, that Plaintiff retains the residual functional capacity to perform a limited range of light work (A.R. 14-15) (citing

---

[1] Plaintiff previously had filed an application for benefits on March 24, 2003, which was denied initially and on reconsideration, and her request for a hearing was dismissed on May 25, 2006, for failure to appear at the scheduled hearing. See A.R. 65-68; Plaintiff's Motion, p. 1.

2

20 C.F.R. 404.1567(b) and 416.967(b)).[2] In reaching this determination, the ALJ deemed not credible Plaintiff's subjective complaints suggesting greater limitation (A.R. 15-16). The ALJ found that Plaintiff's limitations preclude the performance of Plaintiff's past relevant work, but not the performance of the jobs of information clerk and investigator - dealer accounts (which are light jobs), or charge account clerk (which is a sedentary job) (A.R. 20 (adopting vocational expert testimony at A.R. 44-45)).[3] The Appeals Council denied review (A.R. 1-3).

///

///

///

---

[2] Specifically, the ALJ found that Plaintiff could:

> . . . stand/walk [one] hour in an [eight] hour workday, 15-30 minutes at a time; no restrictions on sitting; she must be able to use a cane occasionally; avoid uneven surfaces; lifting/carrying 10 pounds frequently, 20 pounds occasionally; occasional stooping and bending; no squatting, kneeling, crawling, running, jumping, or pivoting; no foot pedals or controls; she can climb stairs but not ladders, ropes, or scaffolds; no work on heights or balancing; she cannot do forceful gripping, grasping, or twisting with her left hand; she can occasionally do fine manipulations such as keyboarding; she can do frequent gross manipulation such as opening drawers and carrying files; no restrictions on her right dominant hand; and her work environment should be air conditioned.

(A.R. 14-15 (appearing to adopt medical expert's testimony at A.R. 33-34)). Portions of the medical expert's testimony reportedly were inaudible and so could not be transcribed from the sound recording made at the hearing. See A.R. 33-34, 37-41.

[3] The vocational expert testified that if Plaintiff were limited to performing only non-public, simple repetitive tasks, she still could perform sedentary jobs as a call out operator and a cutter and paster - press clipping (A.R. 46-47).

3

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

**DISCUSSION**

**I.   The ALJ Erred in the Evaluation of the Medical Evidence.**

Plaintiff contends that the ALJ did not properly evaluate the medical evidence in determining Plaintiff's functional limitations. See Plaintiff's Motion, pp. 2-6. The ALJ relied primarily on the testimony of the medical expert, Dr. Landau, in determining those limitations, and gave the opinion of Dr. Combs, one of Plaintiff's treating physicians, only "limited weight" (A.R. 17-18). Plaintiff argues, inter alia, that the ALJ did not provide adequate reasons for rejecting Dr. Combs' opinions, and also did not fully consider Dr. Landau's opinions (Plaintiff's Motion, p. 5-6). After reviewing the entire record, the Court agrees.

///

**A.   Summary of the Opinions of Dr. Combs and Dr. Landau**

Plaintiff reportedly began seeing Dr. Combs in November 2005, and returned in July 2008 (A.R. 450, 1061). Dr. Combs summarized Plaintiff's medical history when Plaintiff presented for a complete physical in August 2008. See A.R. 448. Dr. Combs indicated in September 2008 that Plaintiff needed meniscus surgery, had foot problems, and had a torn right rotator cuff (A.R. 442; see also A.R. 443-45 (MRI of Plaintiff's left knee showing degenerative change, strain, and tear); A.R. 789-95, 957-59 (records from March 2004 and January 2009 MRIs showing rotator cuff tear to the right shoulder); A.R. 796-801, 839-42 (records from 2001 through 2004 for foot and knee pain issues)). X-rays of Plaintiff's feet and ankles in October 2008 showed bilateral soft tissue swelling and a large left plantar calcaneal spur (A.R. 436-38). In August 2009, Plaintiff reportedly had significant low back pain when she sat and edema to the upper shins, for which she needed to elevate her legs (A.R. 467). A note from December of 2009 observed that Plaintiff seemed to be doing better (A.R. 455).

Dr. Combs wrote a letter dated June 21, 2010, concerning Plaintiff's alleged conditions and limitations (A.R. 1061-63). Dr. Combs stated he believed that Plaintiff has been "permanently disabled since 2001" and that she has not been "capable of full-time work for much of the past decade" based on her medical conditions (A.R. 1062). Dr. Combs explained that due to multiple orthopedic issues and fibromyalgia, Plaintiff would have to take off up to five or more days per month, because her problems are exacerbated by sitting or standing

for any length of time in one position (A.R. 1062).  Dr. Combs would limit Plaintiff to lifting no more than 15 pounds with no bending, twisting or stooping, with periods where she could stand, sit or lie down to alleviate pain, neuropathy and edema (A.R. 1062).  Plaintiff needed knee and shoulder surgeries and could not have the surgeries until she lost weight (A.R. 1062-63).  Dr. Combs opined that Plaintiff's condition would prevent her from returning to work within a year (A.R. 1063).

In his testimony, Dr. Landau stated several opinions regarding Plaintiff's alleged conditions and limitations.  <u>See</u> A.R. 32-41.  Dr. Landau appeared to opine Plaintiff retains a residual functional capacity similar to the capacity the ALJ found to exist (A.R. 33-34).  Dr. Landau also opined, however, that he believed Plaintiff would have difficulties adhering to a normal eight-hour-a-day schedule or 40 hour work week schedule (A.R. 39).  Dr. Landau stated that Plaintiff had a consistent twenty-year history of chronic complaints regarding her alleged limitations (A.R. 39).  Dr. Landau initially characterized those complaints as subjective, but on further examination Dr. Landau said he could not sort out which of Plaintiff's complaints have an objective basis and which have a subjective basis, because her complaints have been so numerous (A.R. 39-40).  Dr. Landau stated that fibromyalgia is a subjective diagnosis, but he did not question the diagnosis of fibromyalgia in Plaintiff's case (A.R. 39).

///
///
///
///

**B.   Analysis**

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . . This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physician opinions). Even where the treating physician's opinions are contradicted,[4] as here, "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and quotations omitted).

In the present case, Dr. Combs opined Plaintiff has been unable to work since December of 2001 (A.R. 1062). Dr. Combs believed that Plaintiff's "multiple orthopedic issues" and fibromyaglia cause disabling limitations, including a need to miss work five or more days per month (A.R. 1061-63). The ALJ rejected Dr. Combs' opinions,

---

[4] Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

claiming: (1) the opinions were not supported by objective evidence; and (2) there was no indication that Dr. Combs had a specialty in mental health or relied on anything beyond Plaintiff's subjective complaints as to her mental health on which to base Dr. Combs' mental health diagnoses (A.R. 17). These claimed reasons for rejecting Dr. Combs' opinions are legally insufficient.

The first claimed reason is impermissibly vague and unspecific. See, e.g., McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinions do not suffice); Embrey v. Bowen, 849 F.2d at 421 ("To say that the medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. . . ."). Moreover, it does not necessarily appear from the record that there is a lack of objective evidence to support Dr. Combs' opinions. Dr. Combs opined that prolonged sitting or standing would exacerbate Plaintiff's orthopedic issues and pain, and that Plaintiff would need to be able to sit, stand, or lie down at will to alleviate associated pain, neuropathy, and edema (A.R. 1062). X-rays of Plaintiff's feet and ankles showed bilateral soft tissue swelling and a large left plantar calcaneal spur (A.R. 436-38), an MRI showed degenerative changes, strain, and tear to Plaintiff's left knee (A.R. 443-45), and edema was observed during Plaintiff's visits with Dr. Combs, requiring that Plaintiff elevate her legs (A.R. 467). The neurologic consultation from October 2007 reported that Plaintiff had lumbar radiculopathy and peripheral polyneuropathy (A.R. 557). On this record, the ALJ's vague assertion that Dr. Combs' opinions were

not supported by objective evidence fails to provide a specific or legitimate reason for rejecting those opinions.

The ALJ's second claimed reason for rejecting Dr. Combs' opinions essentially involves a non sequitur. Dr. Combs did mention that Plaintiff reported times of depression, post traumatic stress disorder, anxiety, and other stress-related problems, which supposedly had caused problems with short term memory, following simple directions, and staying on task. See A.R. 1062-63. However, Dr. Combs did not assign any limitations related to these complaints of alleged mental problems. (Id.). The limitations Dr. Combs assigned in his 2010 opinions were limitations assertedly stemming from fibromyalgia and "multiple orthopedic issues." Thus, Dr. Combs' salient opinions did not concern Plaintiff's mental health, and properly could not be rejected on the basis of Dr. Combs' alleged lack of mental health expertise.

Although not clearly stated as a reason for rejecting Dr. Combs' 2010 opinions, another portion of the ALJ's decision appears to describe perceived insufficiencies in Dr. Combs' documentation of his 2009 opinions:

> On December 15, 2009, Dr. Combs opined the claimant seems to be doing better yet he reports filling out her forms from her lawyer for work . . . Dr. Combs did not identify what limitations the claimant had which prevent her from working or discuss her inability to work within her treatment records. Instead, this opinion must have been contained on

separate document [sic], which was not submitted with the December 15, 2009 (A.R. 17).

Assuming these comments constitute part of the ALJ's rationale for rejecting Dr. Combs' 2010 opinions, the rationale is insufficient. If the ALJ believed that the bases of Dr. Combs' 2010 (or 2009) opinions concerning Plaintiff's limitations were insufficiently documented, the ALJ should have further developed the record. See 20 C.F.R. § 404.1512(e) (the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); see also Smolen v. Chater, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them. He could also have continued the hearing to augment the record.") (citations omitted). The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests were considered, even where (as here) the claimant was represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).

Additionally, even if the Court were to discern no error in the ALJ's rejection of Dr. Combs' opinions, the Court would be unable to find that substantial evidence supports the Administration's decision. The ALJ relied primarily on Dr. Landau's testimony in finding that

1 Plaintiff could work (A.R. 17-19). However, the ALJ failed to
2 acknowledge the portion of Dr. Landau's testimony in which Dr. Landau
3 opined that Plaintiff would have difficulties adhering to a normal
4 eight-hour-a-day schedule or 40 hour work week (see A.R. 17-19, 39).
5 Dr. Landau also stated that Plaintiff had a 20-year history of
6 consistent chronic subjective complaints (A.R. 39). Dr. Landau added,
7 "[a]s far as objective, underlying disease is concerned, though,
8 [inaudible]" (A.R. 39).[5] When questioned further, Dr. Landau stated,
9 "I would have a great deal of difficulty sorting out which complaint
10 has an objective basis and which complaint has a subjective basis"
11 (A.R. 40). The ALJ's failure to address this portion of Dr. Landau's
12 testimony, while relying heavily on other portions of Dr. Landau's
13 testimony, was error. See Tonapetyan v. Halter, 242 F.3d 1144, 1150-
14 51 (9th Cir. 2001) (given ALJ's reliance on medical expert testimony,
15 ALJ was not free to ignore a medical expert's equivocations).

17 An individual's residual functional capacity is the ability to
18 perform "sustained work-related physical and mental activities in a
19 work setting on a regular and continuing basis," which means "8 hours
20 a day, for five days a week, or an equivalent work schedule." See
21 Social Security Ruling 96-8p. Even assuming, arguendo, that the ALJ
22 properly discounted Plaintiff's subjective complaints, in light of
23 ambiguity in the record and Dr. Landau's uncertainty regarding the

---

[5] For this possibly critical portion of Dr. Landau's testimony, the lack of a complete transcript tends to frustrate meaningful review. See Smith v. Califano, 470 F. Supp. 898, 898 (D.D.C. 1978) ("In view of 42 U.S.C. § 405(g) (1976), the inability of the Secretary to produce a complete record of the proceedings before the Agency frustrates judicial review"); see also Greer v. Astrue, 322 Fed. App'x 513, 516 (9th Cir. 2009) (remanding because of inaudible hearing testimony).

11

subjective/objective bases for Plaintiff's complaints, the ALJ should have addressed and reconciled all of Dr. Landau's testimony if the ALJ wanted to rely on Dr. Landau's opinions. See id.

**II. Remand is Appropriate.**

Plaintiff requests that the Court reverse the Commissioner's determination and remand the case for the immediate payment of benefits, or alternatively remand for reconsideration in light of the errors found above. See Plaintiff's Motion, p. 10. In the event the case is remanded for further proceedings, Plaintiff requests that the matter be assigned to a different ALJ.[6]

Because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare

---

[6] Plaintiff claims the ALJ refused "properly [to] consider all of the relevant medical evidence" (id.). Although the ALJ stated during the hearing that he did not have to "look beyond one year prior to the date of the application" (A.R. 36), the record is clear that the ALJ and the medical expert did review and consider all of the medical records Plaintiff submitted. See A.R. 16 (ALJ stating that all of Plaintiff's medical records had been reviewed and considered); A.R. 36 (medical expert testifying he had reviewed all of the medical records).

12

circumstances).[7]

Plaintiff's request that the case be assigned to a different ALJ is denied. Plaintiff has not carried her considerable burden of demonstrating judicial bias. See Liteky v. United States, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"); see also Verduzco v. Apfel, 188 F.3d 1087, 1089-90 (9th Cir. 1999) ("ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased"); Travis v. Sullivan, 985 F.2d 919, 924 (7th Cir. 1993) ("[s]electing a new ALJ is a decision for the [Commissioner] to make when there has been no proof of bias or partiality by the original ALJ in the case"); cf. Lidy v. Sullivan, 745 F. Supp. 1411, 1418 (S.D. Ind. 1989) (court will consider ordering assignment to a different ALJ on remand only where "there is some legitimate, compelling reason" to do so).

///
///
///
///
///
///

---

[7] There are outstanding issues that must be resolved before a proper disability determination can be made in the present case. For this reason, the Ninth Circuit's decision in Harman v. Apfel, 211 F.3d 1172 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) does not compel a reversal for the immediate payment of benefits.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.[8]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 26, 2013.

```
               _____/S/_____
                      CHARLES F. EICK
               UNITED STATES MAGISTRATE JUDGE
```

---

[8] The Court has not reached any of the other issues raised by Plaintiff, except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.